Proceed with the first case on the oral argument calendar, which is Carr v. Kramer. Good morning, Your Honors. May it please the Court. I'm Suzanne Luban. I represent Mr. Carr, the petitioner, and I would like to reserve two minutes for rebuttal. So where do I start? I'd like to first start with New York v. Harris. The Court cleverly volunteered that after none of the parties had briefed it. And for that reason, and that's supported by the U.S. Supreme Court case, Green Law, the State has waived that argument. It's not the job of this Court or any other Court to do the job of litigants and to make their arguments for them. Well, if we undertook that task, how do you distinguish Harris in this situation? Well, Your Honor, it does not apply mechanically. The government argues that or the State argues that in every situation where there is a station house confession after a patent violation, that this confession can come in, and that's not the holding of Harris. Harris addresses the factors that would make the station house confession not a fruit or a product of the illegal entry. And in this case, that late night time and the arrest in the home, which is a time where people are found, is in their homes at night, and bringing this man to the station house and then keeping him there for several hours without allowing him to sleep or rest, and then questioning him. And it's undisputed that the questioner, the sergeant, was present at the station house for an hour and a half of that late night time where they were keeping my client in an interrogation room before he was questioned. I think the Court can intuit that the reason for that is people are more likely to confess when they're tired and when they're kept up all night, and that that is a strategy employed by the officers in this case. So they contacted the individual right away, the sergeant, who had put out the notification that they wanted my client to be brought in to be questioned about a murder, and they had this misdemeanor warrant without nighttime service that they could use, and so that was known on the street. And the officer, so he says, happened upon my client in this apartment, and then they bring him down there after midnight and don't start questioning him until 3.30 in the morning. In all events, all this hinges on the Fourth Amendment as a starting point, right? That's correct, so I can go there now, and I will go there. And so similarly, the State argues that Santana applies mechanically, and I would submit that it's very clear that Santana applied a balancing of factors, which is also supported by the other Supreme Court cases on the subject of hot pursuit and exigencies, Welsh v. Wisconsin and Worden v. Hayden, that the Court must balance the privacy interests, and that would be the degree of intrusion, efforts made by the officer to avoid the privacy intrusion, whether the person whose home is being invaded is, in fact, the person who was being chased, against the reasons for entry or the law enforcement concerns, which would be how severe is the offense. In this case, it's an unstated, so we can only assume it was a technical parole violation that this man Robinson was wanted on. But none of the cases really turned on how severe is the offense, did they, at the Supreme Court? Your Honor, actually, that's Welsh. I know it was a misdemeanor case, but that wasn't a hot pursuit either. Well, they were pursuing him, and then there was a break, and then they went to his home. That's correct. Well, they weren't even one of them anyway. They weren't even pursuing him. But in that case. They came across him after he left the scene. They came across the scene, and then they decided to go to his house. To go to his house. So it wasn't really even a hot pursuit, really. It was a warm pursuit. It was maybe lukewarm. But in Welsh, there was a reason, a law enforcement reason, which the court rejected, but they had a law enforcement reason, the destruction of evidence, the blood alcohol level of the individual. That's why they went into his house to get him. So there was no evidence in this case. But it wasn't a hot pursuit either. So they really didn't have much of a reason they could go in, never mind a hot pursuit. And there really wasn't a hot pursuit. Santana was a hot pursuit, but it was a little. Minimal entry. Minimal intrusion, a minimal entry. Perhaps a minimal. So that's Santana. The difficulty is, and I think you're right, whenever the courts talk about hot pursuit, except that Eighth Circuit case, I think, they tend to feel comfortable throwing something else in. But the something else you kind of look at and you think, do they think hot pursuit means anything or not? And I understand that's a problem. The real problem, though, is what do we do with the fact that we're on habeas 2254 and it looks pretty hard to find a Supreme Court case that says, no, you can't do this? Well, my position is that the State court applied Santana mechanically to say that any time they're following someone, they can arrest them. They can make an entry into a home. Suppose they didn't apply Santana at all. Let's say that, never mind applying it incorrectly, suppose the State court just, the State of California, because we know it's very conservative in its rulings, suppose the State of California just had a rule. You can always go in when you chase somebody. If you're chasing them, you can go in. It doesn't matter what the other circumstances are. That's their rule. Problem is, where is the clearly established Supreme Court authority that says, no, you can't pursue somebody on a probation violation or an misdemeanor into the home? Where is the case? Well, Your Honor, the Williams case does direct the courts to apply generally established Supreme Court law on a topic rather than require the individual facts to match the U.S. Supreme Court case. Right. What's your best Supreme Court case that's affirmative? I mean, Santana says it's allowed and then makes some distinctions. So let's throw out Santana. What's the best case that you have that says this is prohibited? Well, Your Honor, Illinois versus McArthur, the combination of that and Welch versus Wisconsin, I know you say that's not a hot pursuit case, but they are weighing the needs of law enforcement in that case. And so when the offense is, the offense here, it's like a misdemeanor. There's basically no serious offense. There's also no continuous hot pursuit from the scene of a crime. That's the terminology that's used, because there is no scene of the crime in a parole violation. The guy didn't file his monthly statement or something. You know the difficulty, and really, if one wants to give any credence whatsoever to the Supreme Court and other courts have said about hot pursuit, what really seems to be driving it, and I think they said that in Santana or one of the cases, is, you know, cops are chasing a miscreant down the street. He doesn't get to step across the threshold and say, King's X, all is well. And then he can come running out again if he wants, and they can try chasing him again. He runs back in the house and says, King's X. That's what really seems to be driving the hot pursuit concept. You know, we're just not going to put up with that. If that's true, then, well, let me put it this way. The Supreme Court hasn't said one way or the other that that's true. Well, so does that mean that the officer can go door to door and break into every apartment in an apartment building? Because obviously the officer didn't find Mr. Robinson in the apartment, so he was incorrect. And it's unclear whether he was, and there's tons of Supreme Court cases that say you can't do that. And so you are looking at this to see whether the officer was following, like in Santana, they observe the individual. They can see that it's really her, and they know she has evidence that she will then destroy. The law enforcement need for the intrusion is there, whereas in this case there's no law enforcement need for the intrusion. They could have waited outside until they got a warrant, and if Mr. Robinson came out, they would have got him, or when my client came out. Unless he went out the back window. Right, right, which may well have happened. But then in that case, going in and breaking into the third party's private residence doesn't serve the law enforcement need. Okay. Do you want to reserve some time for rebuttal? I do, Your Honor. Thank you. Good morning, Your Honors. Juliet Haley appearing for Appellee Kramer. I want to just begin with the point that was made, which is this is a habeas case. And in addition to having the gloss of needing a well-established Supreme Court authority, this is also this issue comes to this Court not as a straight Fourth Amendment claim. The question here was whether counsel was ineffective in, you know, in conceding the legality of the entry. And then the question then is, were the State courts unreasonable in concluding that the concession was provident? Well, it seems to me that the State courts' interpretation of Santana is a bit flawed. Well, the State courts, the State courts have had Lloyd is one of the several cases decided, but California's rule has been, or its interpretation of Santana has been for years that, as was pointed out, you do not get to run into a house when you begin an arrest in a public place where an officer lawfully has a right to be. You don't get to run into a house in order to avoid the effectuation of that arrest. But Santana says this. It makes a point of this. She was not in an area where she had any expectation of privacy. And either was the suspect. When the arrest began, I mean, recall what happened was that the arrest began, the officer thought that he spotted this parolee who had, who was wanted on a parole violation. So he was trying to effectuate that arrest. The parolee runs into a residence. Petitioner is there as a guest sitting around. It's not his home. He's just there. He just happens to be there. When the parolee runs into some residence, he's attempting. It's not as if this, you know, the cop's just going from house to house to house. I mean, I agree that maybe we'd be talking about some of these cases that Ms. Lubens brought up if the arrest had not begun in a public place. The point I'm making is this. If that's what Santana said, then that's the end of the story. But Santana makes the point that this wasn't much of an intrusion. She was at the threshold. She wasn't in the house. And the Supreme Court seemed to make a distinction on that basis because it cites back to all the law the privacy of the home. Why do you think that reasonable expectations of privacy play no role in a Santana analysis? Because I think that you don't have an expectation. I mean, basically your argument is if it's hot pursuit, it's the end of the story. But that's not what the Supreme Court seems to be saying. Anyway, I interrupted you. Go ahead. I think that what the Supreme Court is saying, I mean, often hot pursuit cases are, you know, I mean, they come in all varieties. I mean, as we've pointed out, I mean, there's sort of warm pursuits and, you know, you have the drugs are being disposed of down the toilet. You have all sorts of things. But I think this is a public policy that the California courts have not been unreasonable in saying you cannot, I mean, the Fourth Amendment doesn't, you know, you don't, you can't just say, as you pointed out, you just can't go, I had a right to arrest you. Now if you get to, you know, you cross the line, you get over here, then suddenly you don't, you have an expectation. Well, yes. I mean, otherwise why would they make the point in Santana of saying she was in the threshold, you don't have a reasonable expectation of privacy in the threshold. Because she was in a place, a public place. She started in the threshold, but she went into the house. Right. But I think the point was is that at the time that the officers began the arrest, she was in a public place. And you do not have an expectation of privacy there. Well, do you think that because he's a guest that this makes any difference, that that would give anyone the right to go into someone else's house to look for a guest? No, but I don't think the guest is the, you know, is necessarily the distinction, but my point is, is that if your trial counsel, and trial counsel in this case tried to suppress this guy's confession three times on every theory he could think of, and you're faced with California jurisprudence, that is, you begin an arrest in a public place, you don't get to, you know, that does not give rise to a Fourth Amendment claim, he was not unreasonable in conceding the legality of the entry. And then he continued to argue it was a misdemeanor warrant, it was executed as a statutory violation. I mean, the question for this Court is, was counsel ineffective? Yes, no, I understand that. But to even get to that, to see whether it's a cul-de-sac, we have to start with whether there's a Fourth Amendment violation under constitutional law, and then we look back through the lens, and we aren't going to forget AEDPA. We're not going to forget the fact that it's an effective assistance claim. We have to take that into consideration. But if it's no Fourth Amendment violation, it's game over anyway. That's why folks say that. I think it is game over. I mean, I think it's game over. And I think that the question you have to ask is, you know, were the State courts – I mean, had counsel kept – I mean, were the State courts unreasonable in saying, you know what, it's our State law clear that this was not a Fourth Amendment violation? Why don't you turn to the Harris argument? I want you to be able to address that before your time runs out. Okay. I think just as on the Harris argument, first of all, it was mentioned in the briefs at the trial level. And then what happened was the State courts said there's no – there's no ineffectiveness because there was no Fourth Amendment violation. The concession was provident. So they didn't go and have to reach the question of prejudice. And I have not been able to find one case, and in fact I think the jurisprudence is to the contrary, that any court is free to resolve a Strickland claim on either an ineffectiveness prong or a prejudice prong. And the burden always remains with the Petitioner to assert that counsel was both ineffective and prejudicially ineffective. The State doesn't waive – it's not a new theory. It's just, you know, he has to prove five things. And in this case, the State courts never reached prejudice because they found that it was not a Fourth Amendment violation, so counsel was not ineffective in the concession. And, you know, this Court, you know, when somebody found – said, hey, you could also resolve it on prejudice. And, yeah, this Court needs to find both ineffectiveness and prejudice. So it's free to resolve it on either prong. But I do think – I think Harris' – you know, it was asserted as a basis below, and it's – yeah, it's – there is no prejudice. I mean – Well, does the fact that it's a misdemeanor warrant play into the Harris analysis here, in that there are California restrictions on entering a home to pursue a misdemeanor warrant? Mm-hmm. How does that fit into the Harris analysis in this case? I don't think it fits into the Harris analysis at all. I think that – I mean, what Harris is just saying is that, you know, once you – you know, if it wasn't about, you know, coming into somebody's home and that the – that the statements come as a product of that home, like because you were in the home, because you've committed this Fourth Amendment violation, then, you know, there's sufficient attenuation when you remove the guy, go down to a police station, he's Mirandized, he waives his – his rights. There's never been a claim – he's never made a claim that his confession was involuntary or that his Miranda rights were violated, that there's – that there's no – there's no longer a taint. And the statutory – you know, the statutory issue in terms of California is that because it's a misdemeanor warrant, you're not supposed to execute it after 10 p.m., I think it is. And, you know, the State court said in this case it didn't rise to any sort of Fourth Amendment violation, because – and in fact, that even that requirement has – with Prop 8 where California became in line with the Federal standards, there's – there's sufficient California case law that says, yeah, this – this misdemeanor coming outside the warrant is not – you know, did not make the officer's conduct unreasonable. And – and the only way you get to support any of Ms. Lujan's argument is this sort of paranoid fantasy. I mean, what you have here is, you know, the cops are doing their job. They see a parole violator. They're trying to effectuate that arrest. There had been a daily bulletin, totally unrelated, that was put out. They recognize the petitioner. They see that he has a misdemeanor arrest warrant, you know, and they bring him down. And it's – it's – I mean, this idea that we, you know, thought about this, we thought, oh, maybe he's in this house and we're going to go on this thing at midnight, I mean, it's – not only is it just a – it's a fantasy, the credibility assessment was explicitly considered and rejected by the State courts. I mean, they – they did not credit – they found that the officer was – was credible. Anything else? No. Any further questions? I'll submit it. Yeah. Thank you. Thank you. Do you have a favorite point? No, please. Okay. You asked me what's a good Supreme Court case, and my strongest case, there are, of course, not that many cases where the defendant wins. But in Worden v. Hayden, which is the first hot pursuit case, they don't use the words hot pursuit. And in that case, it was a bank robber the police learned had run into a house. They knew exactly which house, and it was five minutes after the bank robbery, and the guy was armed. And so the risk to the safety of the community was huge, and so – because of the nature of the crime, because of the – and so the law enforcement needs trumped any privacy concerns, and, of course, they knew right where to find him. Whereas in this case, the law enforcement needs are really very minimal, and so there's not true exigency. And that case really wasn't a hot pursuit either, was it? Right. It was not continuous pursuit, but they let it in because of the needs. So that's the whole issue, is that in every case there needs to be the balancing of all these considerations. And that terminology is really just a fun name that we put on this type of exigency that didn't exist in this case because there's not a severe crime, there's not a danger to the community. Refresh me. What was the parole violation they were seeking? It has never – in this case for Mr. Robinson, it's never been stated. I see. And so for that reason, we have to assume that it was minimal because if it were a crime, I'm sure the state would have hammered that. It was just never discussed. It's not in any of the briefs. Okay. Thank you, counsel. Thank you. Thank you both for your arguments. The case is currently submitted.
judges: Fernandez, Nelson, Thomas